IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VERNON WILLIAMS, FP-8873, )
    Petitioner, )
)
    v. ) 2:12-cv-08
)
LOUIS S. FOLINO, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Vernon Williams for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Vernon Williams, an inmate at the State Correctional Institution in Waynesburg, has presented a petition for a writ of habeas corpus seeking to challenge his life without parole sentence imposed following his conviction by a jury of first degree murder and conspiracy to commit murder at Nos. CC200217550 and 200304687 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on November 20, 2003.[1]

An appeal was taken to the Superior Court in which the issues presented were:

I.     Whether the Commonwealth in its opening and closing arguments before the jury and during the presentation of trial testimony engaged in reversible error because of a pattern of improper prosecutorial misconduct which was highly prejudicial to appellant/defendant, Williams?

II.    Whether it is reversible error for the Commonwealth on repeated occasions to have introduced at trial improper hearsay testimony which was very prejudicial to appellant/defendant Williams?

III.   Should Detective Logan's hearsay testimony about Mr. Mahaffey's alleged oral confession been prohibited by the court because of the intentional destruction by the police of their original notes about the confession?[2]

---

[1] See: Petition at ¶¶1-6.
[2] See: Answer at p.63. All references to pages in the answer refer to the "Bates" numbered pages.

On August 9, 2005, the judgment of sentence was affirmed.[3] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same arguments[4] and on December 7, 2005 leave to appeal was denied.[5]

Petitioner then filed a post-conviction petition. That petition was dismissed on April 9, 2009 as being "patently frivolous and without support on the record."[6] An appeal was taken to the Superior Court in which the issues presented were:

I. The trial court committed an abuse of discretion and/or an error of law in denying collateral relief on the issue of ineffective assistance of counsel when trial counsel: (1) failed to call witnesses at trial; (2) failed to raise an alibi defense; and (3) failed to object to prejudicial comments made by the prosecutor during the course of the trial. Trial counsel had no reasonable basis for his acts and omissions, which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

II. The trial court committed an abuse of discretion and/or an error of law in denying collateral relief on the issues of unavailable exculpatory evidence. Eyewitness Landon Lockett would have testified in a manner contrary to Willie Olds, a crucial Commonwealth witness, who claimed he was at the scene of the shooting. The Lockett evidence was discovered after trial and could not have been obtained at trial through reasonable diligence. The Lockett evidence was not cumulative and not being used solely to impeach credibility. The Lockett evidence would compel a different result.[7]

On February 10, 2011, the Superior Court affirmed the denial of post-conviction relief.[8] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same issues[9] and on September 12, 2011, leave to appeal was denied.[10]

In the instant petition which was executed on January 2, 2012, Williams contends he is entitled to relief on the following grounds:

I. Denial of 6th Amend. Right to the effective assistance of counsel for not presenting all issues to the state court reflecting the denial of federal and state constitutional rights, thereby abrogating petitioner's federal review of claims in state court at all aspects of

---

[3] Id. at pp.132-154.
[4] Id. at p.161.
[5] Id. at p.199.
[6] Id. at p.285.
[7] Id. at p.311.
[8] Id. at pp.371-377.
[9] Id. at p.388.
[10] Id. at p.425.

2

the state court proceedings counsel(s) refused to present petitioner's issues as a federal and state constitutional violation except when Attorney Shoemaker presented issue as Act.1, sec 1 & 9 of Pa. const., & 5th, 6th, & 14th amend. Violation of U.S. const. regarding procedural due process & petitioner's right to effectively question, cross examine, or confront Detective who intentionally destroyed non-testifying co-defendant's allege confession, when detective testified from memorialization of what was said one (1) year earlier. And a denial of 6th & 14th amend. right of confrontation clause, and due process rights for not being able to question, cross examine, or confront co-defendant regarding detective's testimony.

II. Should detective's hearsay testimony about petitioner's codefendant alleged oral confession been prohibited by the court because of the "intentional" destruction by the police of their original notes about this so-called confession.

III. Violation of petitioner's 6th and 14th amend. rights when the Commonwealth during its opening & closing argument before the jury & during the presentation of trial testimony engage[d] in reversible error because of a pattern of improper prosecutorial misconduct that was highly prejudicial to petitioner. Prosecutor in several instances made prejudicial remarks concerning petitioner such as "I will present evidence that will connect petitioner & co-defendant to prior shoot-outs between them and the victim["], but failed to do so. Prosecutor intentionally ignored the trial court's ruling concerning so-called evidence, resulting in a fixed prejudice against petitioner in the minds of the jury. Prosecutor elicited inadmissible hearsay testimony from the Commonwealth witness then asked same witness to identify & confirm prior written hearsay statement.

IV. Counsel was ineffective for not raising "no probable cause to arrest issue" before or during preliminary hearing was conducted or concluded. Thereby violating petitioner's 6th, 8th and 14th amend. rights of U.S. Constitution. Petitioner was arrested on 28 October 2002 for homicide. Preliminary hearing was scheduled for 19 November 2002. On 18 November 2002, alleged co-defendant was arrested & supposedly gave a confession involving petitioner that was destroyed by the detectives. On 19 November 2002 petitioner's preliminary hearing was postponed till 2 December 2002 where the only evidence was co-defendant's alleged confession.

V. Did the trial court judge abuse its discretion and violate petitioner his rights under the Sixth & Fourteenth Amendment to the U.S.Const. petitioner was denied his rights under the 6th & 14th amend. when the trial judge denied his motion for severance from co-defendant who confessed to murder involving petitioner when petitioner has averred and can support that he was/is not "his boy" as referred to in co-defendant's confession to police. Petitioner was denied the chance to confront his accuser, and not be prejudiced by sitting next to confessed killer, and the evidenced presented against him.[11]

---

[11] See: Petition at ¶12.

The Commonwealth concedes that the petition has been timely filed.[12]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the

---

[12] See: Response at p.15.

> United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. <u>Renico v. Lett</u>, 130 S.Ct. 1855 (2010).

The factual background to this prosecution is set forth in the August 9, 2005 Memorandum of the Superior Court citing to the opinion of the trial court:

> At or about 2:30 a.m. on the morning of November 27, 2002 in the Manchester area of the City of Pittsburgh a shooting occurred resulting in the death of Lanel Buckner. It is uncontested that the victim was shot in the presence of several persons, including Mr. Keith Jones. These persons were occupying a limousine which had been rented by Mr. Jones on November 26, 2002 to take him and some friends to a birthday party at a tavern known as Duets on Sixth Avenue in Downtown Pittsburgh.
>
> According to Ms. Pennybaker and Mr. Ritter (witnesses) the victim left the limousine and began conversing with Mr. Jones and his friends. At that time, two men exited a pick-up truck which was parked nearby and one of the two men shot the victim multiple times with a handgun. The shooter and the other man then re-entered the pick-up truck and drove off.
>
> The pick-up truck used in the shooting was reported stolen by Dean Geiger prior to this incident. Mr. Geiger identified Curtis Mahaffey from a photo array as the

5

individual who took his truck. A warrant was issued for Curtis Mahaffey's arrest for Robbery of a motor vehicle and a subsequent arrest was made.

One witness, Cassie Primer, testified at trial that the victim and the two defendants had a "beef" with each other. Ms. Primer testified that the victim had been in a shootout with Curtis Mahaffey weeks prior to the shooting.

One witness, Tosha Peterson, testified at trial that on [sic] an earlier incident she witnessed Curtis Mahaffey driving the said pick-up truck and a male Ms. Peterson was unable to identify told her "tell your baby's dad it's on."

Detective Logan of the Pittsburgh Police Department Homicide Unit received an anonymous tip implicating Curtis Mahaffey in the Murder of Lanel Buckner. Detective Logan interviewed Curtis Mahaffey in the Allegheny County Jail where he was being held on Robbery charges. Detective Logan advised Curtis Mahaffey of his Constitutional Rights and made Curtis Mahaffey aware of the possible charges facing him. Curtis Mahaffey then implicated himself and Vernon Williams in the shooting of Lanel Buckner. The Pittsburgh Police subsequently arrested Curtis Mahaffey and Vernon Williams and the present charges against the two defendants resulted.[13]

In the instant case, Williams seeks to raise five claims for relief.

His first claim is that counsel was ineffective "for not presenting all issues to the state court reflecting the denial of federal and state constitutional rights. While the issue presented on appeal from the denial of post-conviction relief was posited as an alleged abuse of discretion by the trial court it is also clear that the appellate court construed the issue on appeal as:

[Counsel was ineffective in that he] (1) failed to call witnesses at trial; (2) failed to raise an alibi defense; and (3) failed to object to prejudicial comments made by the prosecutor during the course of trial.

Specifically, the Superior Court construed this claim as follows:

Appellant maintains that trial counsel, who could not recall being given the names of Appellant's relatives as potential witnesses was ineffective for failing to: a) present Appellant's father and sister as alibi witnesses and Appellant's aunt to testify that eyewitness William O., who testified that Appellant was involved in the shooting, came to her home before the murder and was not at the murder scene; and b) object to the prosecutor's opening argument that he would present evidence linking the two defendants to prior shoot-outs with the victim.[14]

---

[13] See: Answer at pp.132-133.
[14] Id. at pp.373,374.

6

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

At the post-conviction hearing commencing on March 23, 2009, the petitioner's father testified that he had related to defense counsel that he would testify as an alibi witness that the defendant was with him between about 7:30 p.m. and 1:30 a.m. on the dates in question (PCHA 3/23/09 pp.12,15-16)[15]. The petitioner's sister testified that he arrived at her house at about 1:30 a.m. and that she didn't see him again until about 2:50 a.m. on the date in question (PCHA 3/23/09 pp.26,29,31) and that she too would have testified as an alibi witness (PCHA 3/23/09 pp.25-27).

Petitioner's aunt, Cheryl Williams, testified that Commonwealth's witness, Olds who testified to having observed the homicide, was at her house when the crime was committed (PCHA 3/23/09 pp18,19,20) although she did not observe him the entire evening (PCH 3/23/09 P.24).

Defense counsel testified that he had no recollection of being provided with names of alibi witnesses nor of them volunteering to testify and that he generally had little faith in the credibility of alibi witnesses (PCHA 3/23/09 p-p.5,6,8,9).

---

[15] The homicide occurred at about 2:30 a.m. See: Answer at pp.132-133.

After hearing this testimony, the post-conviction court concluded that the petitioner had failed to make a showing of ineffectiveness and for this reason was not entitled to relief.[16]

As to not calling Cheryl Williams to impeach witness Olds' defense counsel testified that he thought he had performed a "pretty good job with Willie Olds." (PCHA 3/23/09 p.9). In addition Ms. Williams testified that she did not observe Olds for the entire evening (PCRA 3/23/09 p.24).

Even ignoring issues of credibility, the proposed testimony of the petitioner's sister, aunt and father do not provide an account for his presence at the time of the commission of the crime, and for this reason counsel cannot be deemed ineffective for failing to raise a meritless defense. Real v. Shannon, 600 F.2d 302 (3d Cir.2010).

In order to fulfill the Strickland requirements a very high bar exists. Padilla v. Kentucky, 130 S.Ct. 1473 (2010); Ross v. District Attorney, 2012 W.L. 695648(3d Cir.). No such showing is made here. Rather, it appears that as a matter of defense strategy, even if counsel had been aware of these witnesses, it would have been prudent trial strategy not to call them to testify. Rolan v. Vaugh, supra. Thus, counsel cannot be deemed to have been ineffective.

Petitioner also contends that counsel was ineffective for failing to object to the prosecutor's opening argument regarding witnesses who would be called upon to testify. The purpose of an opening argument is merely to outline what the prosecution seeks to prove and counsel cannot be deemed ineffective for failing to raise this meritless claim. Real, supra.

William's second issue is that the trial testimony of Detective Logan should not have been permitted in that it was contrary to the holding in Bruton v. United States, 391 U.S. 123 (1968) and also as a result of Detective Logan's failure to preserve the notes of his interview with petitioner's co-defendant.

On April 14, 2003, petitioner filed a motion for severance alleging that "both defendants allegedly provided oral and/or taped statements of both their personal involvement and the involvement of the other defendant in the criminal acts"; that the extra-judicial statement of one

---
[16] Id. at p.285.

co-defendant is inadmissible against another co-defendant under Bruton, and that the statement were not subject to redaction.[17] That motion was denied on September 19, 2003.[18]

In reviewing this allegation, the Superior Court wrote,

> Specifically, Detective Logan's testimony revealed the following about Appellant's co-defendant's confession, with Appellant's name redacted and replaced with "boy" throughout. Appellant's co-defendant stated that he was driving the pickup truck that belonged to Dean Geiger when he "ran into his boy[,]" who got into the truck. N.T. II at 203. As they drove around, smoking marijuana, they saw the victim's limousine and knew that there was an ongoing birthday party. Id. Appellant's co-defendant said "his boy told him to pull over" and that "his boy" had a gun. Id. he said "he knew what his boy was about to do with the gun." Id. at 204. Appellant's co-defendant pulled the truck over, "his boy" exited the truck, and moments later, Appellant's co-defendant heard four or five shots as he waited in the truck. Id. Appellant's co-defendant waited for "his boy" to return and, when he did, the two of them drove away and dumped the truck. Id. Appellant's co-defendant told Detective Logan that although he knew what "his boy" was about to do, he was afraid of "his boy." Id. at 204-205.
>
> Appellant argues that, although his name was not mentioned in his co-defendant's statement, as presented in Detective Logan's testimony, it was implied necessarily that he was the "boy" because Ms. Bledsoe's testimony placed him with his co-defendant minutes before the shooting.[19]

The Superior Court, based on state law determined that replacing Williams' name with the expression "boy" was an acceptable form of redaction.[20] As a matter of state law, this conclusion is binding here. Swarthout v. Cooke, 131 S.Ct. 859 (2011).

In addition, the circumstances in Bruton were different. In the latter case, the confession of a non-testifying codefendant implicating Bruton by name was introduced. Specifically, the Court considered whether admission of a codefendant's statement which specifically named the petitioner even with instructions that the confession could not be considered against Bruton was constitutionally permissible. The Court concluded that that the admission of the confession violated the petitioner's right of confrontation. However, in the instant case, although there was testimony placing Williams in the company of his codefendant immediately prior to the homicide, his name had been redacted and the confession merely revealed that the codefendant

---

[17] Id. at pp.39-41.
[18] Id. at p.43.
[19] Id. at pp.151-152.
[20] Id. at p.153.

was not acting independently.[21] Therefore, this determination by the state courts was not an unreasonable application of Supreme Court precedent. See: Holland v. Attorney General, 777 F.2d 150 (3d Cir.1985).[22] Thus, this claim does not provide a basis for relief.

Petitioner next argues that he is entitled to relief as a result of Detective Logan's failure to preserve the notes of his interview of petitioner's codefendant, Mahaffey. At the April 25, 2003 suppression hearing, Logan testified that after preparing his formal report of his interview of Mahaffey, in all likelihood he did not preserve his notes since they were not signed by Mahaffey. However, he also testified that had Mahaffey signed the notes they would have been preserved (NT 4/25/2003 p.16). The Superior Court determined that this claim was procedurally defaulted and deemed it waived.[23]

Under Pennsylvania law, only verbatim statements of a defendant need be produced to that party. Commonwealth v. Contakos, 492 Pa. 465 (1981). Clearly, under Pennsylvania law, non-verbatim notes which are formally transcribed and not made by that defendant are further removed from the production requirement. As a matter of evidence, this claim is subject to consideration here only if it rises to a due process violation. Keller v. Larkins, 251 F.3d 408 (3d Cir.) cert. denied 534 U.S. 973 (2001). No such showing is made here. Thus, because the claim is procedurally defaulted and fails to demonstrate a violation of due process, it does not provide a basis for relief.

The petitioner next contends that he is entitled to relief as a result of prosecutorial misconduct. The issue of alleged prosecutorial misconduct goes to the fundamental fairness of a trial and not the particular acts of the prosecutor. Smith v. Phillips, 455 U.S. 209 (1982).

In this regard, Williams argues that during his opening the prosecutor represented that he would present evidence of a prior shoot-out between the petitioner, his codefendant and the victim. In its Memorandum, the Superior Court observed:

> Appellant first argues that the Commonwealth engaged in prosecutorial misconduct in its opening statement by indicating that it would present testimony from Cassie Primer (the victim's friend) that would connect Appellant and his co-defendant to prior shootouts between them and the victim. In its brief, the

---

[21] Additionally, the trial court cautioned the jury that the statement could only be considered against Mahaffey if the jury believed it was voluntarily made and could not be considered as evidence against petitioner (TT.Vol.II p.473).
[22] In Holland the Court observed that even in instances of a failure to redact reversing a conviction is not always warranted unless that error cannot be deemed harmless.
[23] See: Answer at p.154.

10

Commonwealth contends that Appellant did not object to the Commonwealth's opening statement and, therefore, any allegation of misconduct therein is waived. Pursuant to our review of the Commonwealth's opening statement, we agree that Appellant failed to object, thereby waiving this allegation of misconduct.[24]

Thus, a procedural default occurred and the issue need not be considered here.

In his direct appeal Williams also argued that prosecutorial misconduct occurred when the Commonwealth elicited inadmissible hearsay from witnesses Primer and Beldsoe despite prior evidentiary rulings. This issue is also raised as part of his third issue here.

Specifically in reviewing this claim, the Superior Court observed:

> Appellant next argues that the Commonwealth committed prosecutorial misconduct by intentionally violating certain evidentiary rulings thereby eliciting inadmissible hearsay testimony from Commonwealth witnesses Ms. Primer and Jequetta Bledsoe. At trial, Ms. Primer testified that she was driving down an alleyway with the victim as a passenger in her car two weeks before the fatal shooting of the victim in this case. N.T.I at 150 [Court's reference to the trial of November 13 and 14, 2003]. As they drove down the alley, they approached two males in front of them, and, as they got closer, "each male went to the opposite sides of the street, and as [they] passed, gunshots were fired." Id. Ms. Primer sped away from the scene. Id. at 151. When asked what the victim did after that incident, Ms. Primer said that he was concerned and told her that "it must have been those boys shooting at us." Id. When the Commonwealth asked, "which boys," defense counsel's objection was sustained. Id. the Commonwealth proceeded with its questioning as follows:
>
> > Q. Ma'am, did Lanel indicate to you who had fired at you?
> > A. Yes.
> > Q. Okay. And who did he say fired?
> > A. He said D-Bo [i.e. Appellant] and Curt.
>
> Id. at 152. At that point defense counsel again objected and requested a sidebar conference. Defense counsel argued specifically that the Commonwealth was leading the witness. Id. at 153. The trial court convened an *in camera* hearing to clarify what the victim told Ms. Primer. Id. at 154. The record reveals that there was confusion with regard to whether the victim stated conclusively to Ms. Primer that it was Appellant and his co-defendant who had fired on the car, or whether the victim stated that, because they were feuding, the victim assumed it was Appellant and his co-defendant who fired. In the end, the court struck the above-quoted testimony form the record and instructed the jury to disregard it. Id. at 234-35. Although there may have been a dispute with regard to the admissibility of Ms. Primer's testimony, Appellant fails to persuade us that these evidentiary disputes and the Commonwealth's questioning of Ms. Primer rises to

---
[24] Id. at p.136.

11

the level of prosecutorial misconduct whereby the Commonwealth intentionally ignored the trial court's rulings resulting in a fixed prejudice against Appellant in the minds of the jurors.

Additionally, Appellant argues that the Commonwealth improperly elicited testimony from Ms. Primer about a second prior shootout incident between the victim and Appellant's co-defendant, whereby the victim told Ms. Primer that he had shot-out the back window of the truck Appellant's co-defendant was driving at the time. Appellant argues that, at sidebar prior to admission of this testimony, the Commonwealth told the court that it intended only to question Ms. Primer about the feud the victim stated he was having with Appellant and Appellant's co-defendant, and, thus, the Commonwealth committed prosecutorial misconduct by questioning Ms. Primer about the second shootout, rather than limiting its questioning to the ongoing feud. The Commonwealth did not indicate that it would be similarly limiting its questioning about the second shooting incident. In sum, Appellant has failed to show that the Commonwealth deliberately misrepresented its offer of proof to the trial court or its intentions with regard to further questioning.

Appellant also contends that the Commonwealth committed prosecutorial misconduct by asking Ms. Primer to identify and confirm a prior consistent written hearsay statement that she had given to police with regard to both prior shootout incidents…

The statement was not published to the jury and, thus, the jury did not know if the statement was consistent with Ms. Primer's trial testimony or not. Again, Appellant fails to convince us that the Commonwealth's actions amounted to prosecutorial misconduct that formed a fixed bias against Appellant in the minds of the jurors.

Appellant also argues that the Commonwealth committed prosecutorial misconduct by eliciting hearsay testimony from Ms. Bledsoe. Tosha Peterson (the mother of the victim's daughter) and Ms. Bledsoe were at the birthday party the evening of the fatal shooting. Id. at 181. They left the party and drove to the victim's house, when they saw a gray pickup truck behind the victim's house. Id. at 184,188. Ms. Peterson testified that the passenger of the truck got out and said to her "tell [your] baby's dad it's on." Id. at 187. Ms. Peterson testified that this was "street talk" meaning that he and the victim would have a confrontation. Id. She could not identify the passenger, but was later able to identify Appellant's co-defendant as the driver of the truck Id. at 188. Within minutes of this event, Ms. Peterson called the victim to warn him of the threat. Id. at 188-189. She told the victim "they were up there," and "the phone hung up." Id. at 193. Just minutes later, she received a phone call informing her that the victim had been shot. Id. at 189…

Ms. Bledsoe was with Ms. Peterson during this time. She recognized Appellant's co-defendant as the driver of the pickup truck that stopped them behind the victim's house. Id. at 212. Although she did not recognize or hear what the passenger who got out of the truck said to Ms. Peterson, after the exchange, as they pulled away from the area, she described Ms. Peterson's demeanor as "shook up, like oh, my God" – referring to the fact that the men were "after" the victim. Id. at 214. Ms. Peterson told Ms. Bledsoe that she wanted to "[g]et to the nearest phone and call [the victim]." Id. They drove quickly to Ms. Bledsoe's house to call the victim. Id. Ms. Bledsoe testified that she heard Ms. Peterson warn the victim, during the phone call, that Appellant and his co-defendant were near the victim's house. Id. at 219. Appellant argues that this testimony, identifying Appellant and his co-defendant as the individuals who were near the victim's house minutes prior to the shooting, constituted inadmissible hearsay that had been excluded by a previous court ruling.

Prior to Ms. Beldsoe's tesitmony, the trial court held an *in camera* hearing in which it heard argument and decided that Ms. Bledsoe's testimony about Ms. Peterson's identification of Appellant and his co-defendant as the individuals behind the victim's house was not admissible as a present sense impression exception to the hearsay rule. See id. at 206; Pa.R.E. 803(1). The Commonwealth then indicated that it intended to call Ms. Bledsoe to testify about her own identification of Appellant's co-defendant as the driver of the truck behind the victim's house and that it would, depending on Ms. Bledsoe's answers, explore the issue of Ms. Peterson's demeanor during the relevant time. N.T. at 207. The Commonwealth expressly indicated to the court and defense counsel that, if Ms. Bledsoe described Ms. Peterson as "frantic" during this time, it would seek to admit Ms. Bledsoe's statement about Ms. Peterson's identification of Appellant and his co-defendant on the phone under the excited utterance exception to the hearsay rule. Id. Subsequently, Ms. Bledsoe testified that after Ms. Peterson received the threat against the victim, she was "shook up" and drove quickly to get to the nearest phone to warn the victim. Id. at 214. Accordingly, as the Commonwealth had previously indicated it would do, it elicited the contested testimony from Ms. Bledsoe. Id. at 215. Following additional argument upon defense counsel's objection, the trial court agreed with the Commonwealth that the testimony fell within the excited utterance exception to the hearsay rule. Id. at 218; Pa.R.E. 803(2). Again, Appellant fails to persuade us that the Commonwealth's conduct surrounding this testimony and its eventual admission constituted prosecutorial misconduct. Indeed, it appears that defense counsel was on notice that the Commonwealth was planning to introduce the statement under the excited utterance exception…

Finally, Appellant argues that the Commonwealth committed prosecutorial misconduct in its closing argument by assailing Ms. Peterson's credibility …Appellant objected specifically to the Commonwealth's characterization of Ms. Peterson as a witness who "went south" on the prosecution and argued that the statement created the implication that Ms. Peterson had changed her stand. N.T.II

13

at 456… Although the court refused to grant a mistrial, the court did sustain defense counsel's objection to the statement and … offered to provide a curative instruction … Appellant's counsel responded by agreeing to the … cautionary instruction the court suggested…

In the instant case, Appellant's co-defendant's attorney argued in his closing that Ms. Peterson "testif[ied] truthfully" when she stated that she could not identify either individual who approached her behind the victim's house shortly before the shooting. See N.T. II at 359… The Commonwealth's comments with regard to Ms. Peterson's credibility were responsive to defense counsels' comments about the same; however, we agree … that the Commonwealth's particular comment about Ms. Peterson "going south" on the Commonwealth was improper… Given that the Commonwealth's remarks were in response to defense counsels' remarks about Ms. Peterson's credibility and given that the jury is presumed to follow the curative instruction provided by the court and agreed-to by Appellant's counsel, we cannot conclude that the Commonwealth engaged in prosecutorial misconduct…[25]

We first observe that allegations of evidentiary errors do not provide a basis for relief unless they rise to level of a due process violations. Keeler v. Larkins, supra. Additionally, the Superior Court based all its rulings on Pennsylvania law, and accordingly its determinations are not generally subject to review here unless it involved an unreasonable application of federal law. Estelle v. McGuire, 502 U.S. 62 (1991); Hawkins v. Costello, 460 F.3d 238 (2d Cir.2006), cert. denied 549 U.S. 1215 (2007). No such showing is made here.

Petitioner also argues that prosecutorial misconduct occurred when during his opening statement the prosecutor referred to evidence he intended to introduce which would link the petitioner and his co-defendant to prior shootings between themselves and the victim when in fact no such evidence was presented. In reviewing this claim, the Superior Court wrote:

"[W]e will only reverse the trial court if the unavoidable effect of the prosecutor's comments is to create hostility against the defendant such that the jury is hindered in its job of objectively weighing the evidence." Commonwealth v. Miles, 681 A.2d 1295, 1302 (Pa.1996). We have said, "[t]he focus of this Court's consideration of claims regarding prosecutorial misconduct is to determine whether the defendant was deprived of a fair trial and not whether the defendant was deprived of a perfect trial." Commonwealth v. Carter, 855 A.2d 885, 889 (Pa.Super.2004)…[26]

---

[25] Id. at pp.137-147.
[26] Id. at pp.135-136.

The Superior Court reviewed the allegation of prosecutorial misconduct in its opening statement and determined that since no objection was lodged, the claim of misconduct was waived.[27] Thus, as a matter of Pennsylvania procedural law, it was concluded that the claim was defaulted, and accordingly it is not subject to review here. Coleman supra. Additionally, as noted above evidence was presented which linked the petitioner and his co-defendant to prior shooting incidents.

Williams' next issue is that there was no probable cause for his arrest. This issue was never raised in the state courts and is procedurally defaulted. Coleman supra.

Petitioner's final issue here is that error occurred as a result of the trial court's failure to sever him from a joint trial with his co-defendant who had made a statement to the investigators. This issue likewise was never raised in the state courts and is procedurally defaulted. Coleman supra.

Additionally, we observe that there is no basis for federal relief since the issues which the petitioner seeks to raise here were not raised in the context of federal claims in the state courts and for this reason those courts were not put on notice that federal claims were being raised. Baldwin v. Reese, 541 U.S. 27 (2004); Halloway v. Horn, 355 F.3d 707 (3d Cir.) cert. denied 543 U.S. 976 (2004).

A federal court may grant habeas corpus relief to a state prisoner only if the state court's adjudication on the merits was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court. 28 U.S.C. §2254(d)(1). No such showing has been made here, and accordingly the petitioner is not entitled to any relief.

For this reason, it is recommended that the petition of Vernon Williams for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

                                                  Respectfully submitted,
                                                  s/ Robert C. Mitchell
Filed: March 29, 2012                    United States Magistrate Judge

---

[27] Id. at p.136.